MAINE SUPREME JUDICIAL COURT          Reporter of Decisions
Decision:     2026 ME 65
Docket:       Wal-25-390
Argued:      May 7, 2026
Decided:     July 21, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.

## ESTATE OF ROBERT R. YOUNG

TAUB, J.

[¶1]  Robert F. Young Jr. and Dianne M. Parker appeal from an order of the Waldo County Probate Court (*Owen, J.*) finding, after a bench trial, that a document handwritten by their father, Robert R. Young Sr., was not a valid holographic will, and denying their petition for probate.  Contrary to their arguments, the court properly considered extrinsic evidence, there is competent evidence to support the court's finding that Robert Sr.[1] lacked testamentary intent, and the trial proceedings did not violate Robert Jr.'s and Parker's due process rights.  We therefore affirm the order.

---

[1]  For clarity, we refer to the parties who share a surname by their first names and, where applicable, suffixes.

## I. BACKGROUND

### A.    The Underlying Facts

[¶2]    The court found the following facts, which are supported by competent evidence in the record.  *See Est. of Gagnon*, 2016 ME 129, ¶ 2, 147 A.3d 356.

[¶3]    Robert Sr. died on October 1, 2017.  Appellants Robert Jr. and Parker, and Appellee Raymond E. Young, are the surviving children of Robert Sr. and his late wife.  For many years, Robert Sr. was estranged from Robert Jr.  Robert Sr. owned Young's Lobster Pound in Belfast.  Since Robert Sr.'s retirement in 2000, Raymond has run the lobster pound.

[¶4]    On September 6, 2000, Robert Sr. duly executed a will in which he allocated his assets between Raymond and Parker, gave the lobster pound to Raymond, and left Robert Jr. only one dollar.  Robert Sr.'s longtime attorney prepared and notarized the will, and Robert Sr. signed it by writing "Robert R. Young Sr." in cursive.

[¶5]    On Saturday, September 30, 2017, the day before Robert Sr. died, Robert Sr. met with Robert Jr.  Robert Jr. inflamed his father by telling him that Raymond was seeking to sell the lobster pound and that Raymond did not invite Robert Sr. to Raymond's daughter's wedding.

[¶6]   While the two were together that day, Robert Sr. handwrote a two-page document that read:

> Lease agreement for Young's Lobster Pound will not be renewed.
>
> Raymond, wife + extended family shall no longer be employed at Young's Lobster Pound.
>
> All Youngs property + equipment shall be auctioned off first of 2018 to highest bidder.
>
> All proceeds after taxes shall go to Dana-Farber Hospital in memory of my loving wife of 62 years.
>
> All stocks + bonds in my name + Raymond shall be diverted to this charity also.
>
> All bank deposits in Camden Bank shall go to Dianne Parker.
>
> All stocks + bonds just transferred to Dianne Parker shall stay as set up.
>
> My house on 8 Fairview St. shall go to Dianne also, plus my garage, including all cars, trucks, loader, boats, motors + all equipment there-in.
>
> Any moneys left shall go 50/50 to Dianne Parker + [Robert Jr.]
>
> I shall then go and be with the love of my life into etern[i]ty where I'll belong.
>
> > Love,
> > Bob Young
>
> Please say goodbye to all my friends.
>
> This my last will + testament on 9/30/17

All Claires jewelry goes to Dianne Parker including her diamond bracelet + rings.

Robert Sr. wrote the entire document, including his name, in print letters. Robert Sr. told Robert Jr. that he would take this "note" to his attorney on Monday to turn it into a "permanent will." The next morning, on Sunday, Robert Sr. died.

## B.   Procedural Background

[¶7] On October 18, 2017, Raymond filed a petition in the Probate Court to formally probate Robert Sr.'s September 6, 2000, will. On October 23, 2017, Robert Jr. and Parker filed a petition to formally probate the September 30, 2017, holographic document.

[¶8] Raymond also filed a lawsuit against Robert Jr. and Parker in the Superior Court (Waldo County), alleging, among other things, that Robert Jr. wrongfully caused Robert Sr. to change his will. In June 2022, the Superior Court entered an order granting summary judgment to Robert Jr. and Parker.

[¶9] In April 2025, the Probate Court held a three-day bench trial to determine whether the 2000 will or the 2017 holographic document should be admitted into probate. The court found that Robert Sr. did not intend the 2017 document to be his will and that it was instead a note that he planned to take to

his attorney. The court denied Robert Jr. and Parker's petition to probate the 2017 document and allowed the 2000 will.

## II. DISCUSSION

**A. The court did not err in considering extrinsic evidence regarding Robert Sr.'s testamentary intent.**

[¶10] Robert Jr. and Parker argue on appeal that the Probate Court erred by considering extrinsic evidence on whether Robert Sr. intended the holographic document to be a will. The court considered extrinsic evidence that Robert Sr. always signed legal documents in cursive as "Robert R. Young Sr." and that after Robert Sr. completed the 2017 holographic document, he told Robert Jr. that he was taking it to his attorney on Monday to make a "permanent will."

[¶11] Because Robert Jr. and Parker did not object at trial to the admission of the extrinsic evidence, they failed to preserve the issue for appellate review. Even if they had preserved the issue, we would have little difficulty concluding that the trial court properly admitted extrinsic evidence of Robert Sr.'s testamentary intent.

[¶12] Under the Probate Code, "[i]ntent that a document constitute the testator's will may be established by extrinsic evidence." 18-C M.R.S. § 2-502(3) (2026). Section 2-502(3) plainly permits the introduction of extrinsic evidence

on the issue of testamentary intent, and the statutory language in no manner indicates that the Legislature intended to limit the use of extrinsic evidence to instances in which the language of a document is ambiguous. *See Sunshine v. Brett*, 2014 ME 146, ¶¶ 10, 13, 106 A.3d 1123 (explaining that we interpret statutes de novo and give effect to the unambiguous statutory language when the result is not absurd or illogical). The court was thus expressly permitted to consider extrinsic evidence on whether Robert Sr. intended the 2017 holographic document to be his will.

[¶13] In arguing the contrary, Robert Jr. and Parker rely on cases in which there was no dispute that the testator intended a document to be a will and the issue was how to interpret it. *See Est. of Leighton*, 638 A.2d 723 (Me. 1994); *Est. of Utterback*, 521 A.2d 1184 (Me. 1987); *Swan v. Swan*, 154 Me. 276, 147 A.2d 140 (1958); *Philbrook v. Randall*, 114 Me. 397, 96 A. 725 (1916); *Crosby v. Cornforth*, 112 Me. 109, 90 A. 981 (1914). Courts generally must interpret a will based on its "four corners," and courts may consider extrinsic evidence in interpreting a will only when the will is ambiguous. *Est. of Silsby*, 2006 ME 138, ¶ 15, 914 A.2d 703. Here, though, the issue is not how to interpret the 2017 holographic document but whether Robert Sr. intended it to be his will in the first place. Moreover, we decided those cases before the

Legislature enacted the present language in 18-C M.R.S. § 2-502(3). Under the plain language of 18-C M.R.S. § 2-502(3), the court properly considered extrinsic evidence on the issue of testamentary intent.

**B.    The court's finding that Robert Sr. did not intend the 2017 holographic document to be his will is supported by competent evidence.**

[¶14]   A document that was not executed in compliance with the statutory requirements for wills may nevertheless be a valid holographic will "if the signature and material portions of the document are in the testator's handwriting," 18-C M.R.S. § 2-502(2), and the testator intended that the document be a will, *see* Restatement (Third) of Prop.: Wills and Donative Transfers §§ 3.1 cmt. g, 3.2 cmt. c (1999). In a will contest, the contestant has the burden of establishing a lack of testamentary intent. 18-C M.R.S. § 3-407 (2026); *Est. of O'Brien-Hamel*, 2014 ME 75, ¶ 26, 93 A.3d 689.

[¶15]   We review a court's determination of a testator's intent for clear error. *Est. of Beatty*, 673 A.2d 1325, 1327 (Me. 1996); *Est. of Wilson*, 542 A.2d 838, 839 (Me. 1988). "A finding of fact is clearly erroneous if there is no competent evidence in the record to support it; if the fact-finder clearly misapprehends the meaning of the evidence; or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the

8

case." *Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, 140 A.3d 478 (citations and quotation marks omitted).

[¶16]   The court did not clearly err in finding that Raymond met his burden of establishing that Robert Sr. did not intend the 2017 holographic document to be his will.  Robert Sr.'s attorney testified that Robert Sr. signed legal documents, including his 2000 will, in cursive as "Robert R. Young Sr.," and that he was not aware of Robert Sr. ever using any other form of signature. Similarly, both Raymond and Robert Jr. testified that Robert Sr. always signed documents as "Robert R. Young Sr."  But on the 2017 document, Robert Sr. printed his name as "Bob Young."  This is competent evidence that Robert Sr. did not intend it to be a will or other legal document.[2]

[¶17]   Moreover, Robert Jr. testified that his father referred to the document as a "note" that he was going to take to his attorney the following Monday to make into a "permanent will."  The court found that Robert Sr. thus "acknowledged to [Robert Jr.] that the holographic document was not a final

---

[2] The court did not, as Robert Jr. and Parker suggest, find that the 2017 holographic document did not comply with 18-C M.R.S. § 2-502 because Robert Sr. printed his name rather than writing it in cursive.  Rather, the court found that the difference between how Robert signed the holographic document and how he signed legal documents evidenced his lack of testamentary intent.

last will and testament" but was instead a note he planned to take to his attorney.[3]

[¶18] Finally, Robert Sr.'s lawyer and accountant testified that Robert Sr. never spoke to them about changing his estate plan to disinherit Raymond, and Raymond testified that he had friendly interactions with Robert Sr. up to the day of his death. The court found it unlikely that Robert Sr. would finalize his will without first discussing it with his lawyer and accountant or change his plan for the lobster pound without telling Raymond.

[¶19] To be sure, there is evidence that could support a finding that Robert Sr. intended the 2017 holographic document to be his will, including that on the final page of the document he wrote, "This my last will + testament on 9/30/17." But our review is limited to whether there was competent evidence supporting the court's finding. As discussed above, there is competent evidence supporting the court's finding that Robert Sr. lacked testamentary intent, and we thus conclude that there was no error.

---

[3] Robert Jr. and Parker argue that the court erred when it quoted Robert Jr. as testifying that Robert Sr. told him that he was "taking the note to [his] attorney . . . on Monday to make a permanent will." But a portion of the testimony at issue is marked as "indiscernible" in the transcript, so Robert Jr.'s exact words are unclear. In any event, Robert Jr. testified that Robert Sr. told him that he was going to his attorney's office on Monday and then answered "yes" when asked, "So . . . he wanted you to have a picture of these notes he intended to take . . . to [his attorney] to make a permanent will?" And at other times in his testimony, Robert Jr. referred to the document as a "note." The substance of the court's finding is thus supported by the evidence even if Robert Jr. did not say the exact words that the court attributed to him.

**C. The trial proceedings did not violate Robert Jr.'s and Parker's due process rights.**

[¶20] "When significant rights are at stake, due process requires[] notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *Genujo Lok Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 18, 943 A.2d 573. Robert Jr. and Parker argue that their due process rights were violated because they were not on notice that testamentary intent was an issue for trial and that this prejudiced their ability to litigate it. We review de novo whether individuals were afforded due process. *In re Children of Benjamin W.*, 2019 ME 147, ¶ 8, 216 A.3d 901.

[¶21] We conclude that Robert Jr. and Parker were afforded due process because the record demonstrates that they were on notice that intent was an issue for trial. In a memorandum of law that Raymond filed in advance of the trial, he stated: "Whether Robert Young intended for this document to be a holographic will or something else is a focal point in this case." Raymond went on to argue that the document "does not reflect a clear testamentary intent" and was instead "a set of references or notes for a subsequent discussion." A week before trial, Raymond filed a motion in limine seeking to introduce hearsay statements made by Robert Sr. relating to his "donative and testamentary

intent."[4]  Raymond thus made clear that he intended to litigate Robert Sr.'s testamentary intent at trial.

[¶22]  Robert Jr. and Parker point out that in an order of "clarification of issues before the court," the court did not expressly identify testamentary intent as an issue to be tried.  The court's order stated:

> In summary, it is this Court's opinion that the following issues can be heard by this court in addition to whether the 2000 Will or the 2017 holographic document should be admitted into probate: testamentary capacity, undue influence, fraud as it relates to statements purportedly made by one of the Respondents, duress, mistake or revocation.

But the court referred to testamentary intent twice in the order and identified the question of which document should be admitted into probate as an issue for trial.  This, along with Raymond's identification of intent as a "focal point" in the case, was sufficient to put Robert Jr. and Parker on notice that testamentary intent was a contested issue for trial.

[¶23]  Even if Robert Jr. and Parker were unaware at the outset of the trial that testamentary intent was at issue, this became obvious during the trial because of the evidence introduced.  Notably, Raymond introduced Robert Sr.'s statement that the holographic document was a note he was going to take to his

---

[4]  While Robert Jr. and Parker argued in opposition that hearsay issues should not be resolved prior to trial, they did not argue that Robert Sr.'s statements were not relevant or that testamentary intent was not at issue.

12

attorney, and various witnesses testified that Robert Sr. wrote his name on the holographic document differently from how he signed legal documents. On the third day of trial, Robert Jr. and Parker even acknowledged that testamentary intent seemed to be in dispute when moving for judgment as a matter of law, and they again addressed testamentary intent in their written closing statement.

[¶24] Litigants are not denied due process if they fail to take advantage of procedural mechanisms that are available to protect due process rights. *See In re Involuntary Commitment of M.*, 2020 ME 99, ¶ 17, 237 A.3d 190; *In re Children of Benjamin W.*, 2019 ME 147, ¶ 12, 216 A.3d 901; *In re A.M.*, 2012 ME 118, ¶ 23, 55 A.3d 463. Once it became clear during trial that testamentary intent was at issue, Robert Jr. and Parker did not take advantage of available mechanisms to mitigate any surprise. For example, they did not object to evidence relevant to testamentary intent or seek time to rebut Raymond's evidence by requesting a continuance.[5] Instead, they engaged with the issue and claimed surprise only after the court ruled against them.[6] Because

---

[5] Robert Jr. and Parker claim that at trial they "lodged a standing objection, expressly preserving the limitation that such evidence was admissible only insofar as it related to the pleaded issues of undue influence, fraud, mistake, or similar tort-based challenges to the testamentary instrument." No such objection appears in the transcript, however.

[6] Raymond argues that even if the holographic document is a valid will, it should not be probated as a matter of public policy because Robert Sr. allegedly excluded family members out of racial

Robert Jr. and Parker did not seek any remedy at the trial court, we conclude that they were not denied due process.

The entry is:

Order affirmed.

_____

F. David Walker, Esq., Walker Law, Bangor, and Jennifer L. Eastman, Esq. (orally), Eastman Law, LLC, Bangor, for appellants Robert F. Young and Dianne Parker

Brett D. Baber, Esq. (orally), and Michael Harman, Esq., Russell Johnson Beaupain, Bangor, for appellee Raymond Young

Waldo County Probate Court docket number 2017-0219
FOR CLERK REFERENCE ONLY

_____

animus.  The court rejected this argument, concluding that the will is "facially neutral."  Because we affirm the court's finding that the holographic document is not a will, we do not reach this argument.